SHOULDICE v. McLEOD'S ESTATE.

1. ESTATES OF DECEDENTS—CLAIMS—QUESTION FOR JURY.

A claim was presented against an estate for money received. It appeared that claimant investigated some mining property, and that deceased purchased it, and held the legal title, and that thereafter claimant continued to have some interest in it, either as employé or owner. Claimant made an agreement with P. to sell him, or whomsoever he might name, a one-fourth interest in the mine for $3,000, which was underlined by deceased that he would transfer that amount of stock to claimant. Other similar writings were made. Subsequently deceased assigned undivided interests to persons designated by P., and received from him a check for $3,000. Later a corporation was organized, and stock issued to claimant, deceased, and the persons to whom interests had been assigned. P. testified that claimant told him the $3,000 was to be used in developing the mine, which statement claimant denied. *Held*, that whether such money belonged to claimant or deceased was a question of fact for the jury.

2. INSTRUCTIONS TO JURY—STATEMENTS OF FACT.

The court charged the jury that the fact that the title to the mining property was in deceased was a circumstance for them to consider, but not a controlling one, as frequently titles to mining property are taken by one person, and held by him in trust for others. *Held*, that, as the record showed other persons were interested in the mine, and the title held by deceased, the charge was not misleading.

3. EVIDENCE—FACTS EQUALLY WITHIN KNOWLEDGE OF DECEASED.
    Testimony by the claimant that the money received from the
    check was his was incompetent, as such fact was necessarily
    equally within the knowledge of the deceased.

Error to Marquette; Stone, J.   Submitted November
19, 1901.   (Docket No. 135.)   Decided May 8, 1902.

Henry Shouldice presented a claim against the estate
of Norman McLeod, deceased, for money had and re-
ceived.   The claim was disallowed by the commissioners,
and claimant appealed to the circuit court.   From a judg-
ment for claimant, defendant brings error.   Reversed.

  *Clark & Pearl,* for appellant.

  *Ball & Ball,* for appellee.

MONTGOMERY, J.   This case originated in the probate
court of Marquette county.   On an appeal to the circuit
court, and on a trial by a jury, a verdict in the sum of
$5,721.49 was entered against the estate.   The case is
brought here for review on error.   The claim presented
was for money had and received by deceased on October
9, 1882, and for interest thereon to the time of hearing.
Briefly stated, the claimant gave testimony showing the
following state of facts:   McLeod, the deceased, held the
legal title in 1882 to a mining property known as the "Ells-
worth Mine," in Marquette county.   Before McLeod be-
came the purchaser of this property, Shouldice, the claim-
ant, had investigated the property, and examined the sur-
face indications.   After McLeod became the purchaser,
claimant continued to be interested in the property; but
whether as an owner or as an employé appears not to be sus-
ceptible of direct proof, because of the death of McLeod,
and of the incompetence of Shouldice to testify as to that
question.   It appears, however, that on the 22d of Sep-
tember, 1882, Shouldice made an agreement with one
Isaac A. Pool, of which the following is a copy:

"I hereby agree to sell to Isaac A. Pool, or whoever he may designate and name, one-fourth interest, being five thousand shares, in the Ellsworth mine, and all leasehold rights in and to the south half of the southeast quarter of section nineteen, town forty-seven, range thirty, being in Marquette county, State of Michigan, for and upon the payment of three thousand dollars.

[Signed] "H. SHOULDICE."

It also appears that on the 25th of September, 1882, this agreement was underwritten by McLeod as follows: "I will transfer that amount of stock to H. Shouldice." A similar agreement was made for an additional 100 shares of stock, and was likewise underwritten by McLeod with an agreement to transfer the stock to Shouldice. It appears that subsequently, on the 5th of October, an assignment was made by McLeod, to parties named by Pool, of undivided interests in the mine. Three different assignments were made, one of which recited, "This in fulfillment of *our* agreement made by Henry Shouldice to Isaac A. Pool September 22, 1882;" and the other two assignments contain a clause reading, "This in fulfillment of *an* agreement made by Henry Shouldice to Isaac A. Pool September 22, 1882."

Pool testifies that, when negotiating or after closing with Shouldice, he learned that the leasehold was in Mr. McLeod; that it stood in his name; and the witness proceeds to state:

"That is why McLeod wrote on the bottom of those two that he would transfer the stock; that I should have it from Henry Shouldice. And when I had effected the sales, instead of receiving the title to the whole 5,000 shares for myself, I went to McLeod and got a transfer to my customers direct from him, so that they could have no question about the title being correct."

The witness testified that, when he got the check, he carried it to Negaunee, and saw Mr. Shouldice, and handed him the check, and they went together to Mr. McLeod, and passed the check over to Mr. McLeod. Later on, a company was organized, and shares of stock

issued, of which 6,250 were issued to McLeod, 6,650 to Shouldice, and the remainder to parties to whom sales had been made.   The witness also testified that his recollection was that Mr. Shouldice stated that the money which he (Pool) agreed to pay for the interest purchased by him would carry the thing along until there was iron enough on top of the ground to .sell; that the parties would not have to put in any more money.   Shouldice disputed this last statement.

The circuit judge was of the opinion that the inferences to be drawn from the state of facts shown were to be drawn by the jury, and submitted the question to the jury as to whose money it was that was paid over by Mr. Pool by the check made in the name of McLeod, and handed to Shouldice, and by him passed to McLeod.   He instructed the jury to take all the circumstances surrounding the matter into consideration,—the fact that Mr. Shouldice had made this agreement with Mr. Pool, assented to by Mr. McLeod; that McLeod followed up the arrangement by making a formal transfer of the interest in fulfillment of that agreement; the circumstances testified to by Mr. Pool; why he made the check payable to McLeod instead of Shouldice; and the fact that the money was paid over by Shouldice to McLeod,—and determine whether there was a preponderance of evidence in favor of the plaintiff's claim that this money belonged to him.   It is contended by the defendant that no such inference as the jury drew is open, upon the state of facts shown.   But we incline to the opinion that this question was properly treated as a question of fact by the circuit judge.

Complaint is also made of the instruction of the circuit judge as follows:

" I have said to you that it is undisputed that the title to this lease was in Mr. McLeod.   That is a circumstance for you to consider.   It is not a controlling circumstance, however, in the case, necessarily; for we know that very frequently titles are taken to mining property by one .person, and held by him in trust for the others."

We think the jury could not have been misled by this instruction. The case is very different than it would be had the present record been barren of any testimony showing that titles were thus taken. But it would appear from this record that other parties were interested in this mine besides McLeod, and yet the title to the whole was vested in him. Under these circumstances, we think the jury could not have been misled by the statement of the circuit judge.

The case was a very close one on its facts, and it will be apparent at a glance that the slightest contravention of the rules of evidence, by permitting testimony from the claimant which was incompetent, might have turned the scale. We are constrained to hold that the rule, in one respect, was not observed in this record. Mr. Shouldice was a witness on his own behalf, and was asked in regard to the statements alleged to have been made to Mr. Pool that the money which he expected to receive upon the sale would carry the thing along until the iron was on top of the ground, etc., and testified as follows:

"*Q.* Was it intended to use it in the development of this property?

"*A.* No, sir. It was my own individual money, and it was not intended for any such purpose. It was intended—

"*Mr. Clark:* I move to strike out the evidence as incompetent.

"*A.* To buy off Mr. Atkinson; that is what it was intended for.

"*The Court:* I should say that that wouldn't necessarily be, or probably be, within the knowledge of the deceased.

"*Mr. Clark:* Note an exception."

We think this testimony should have been stricken out. The witness testified to a fact that must have been equally within the knowledge of the deceased, namely, that the money to be realized on this sale was his (the claimant's) individual money. This was the meat of the question to be determined by the jury. We think it quite possible that this testimony, coming in the form that it did, es-

caped the attention of the circuit judge. Indeed, it is contended by claimant's counsel that the motion to strike out only related to the last part of the answer; but we do not so read the record. In fact, defendant's counsel interposed the objection before the answer was fully completed.

The estate also interposed the defense of the statute of limitations, and counsel for the estate urge that this defense was fully made out. We are convinced, however, that, upon the record, it was a question for the jury, under proper instructions, which were given.

For the error pointed out, the judgment will be reversed, and a new trial ordered.

HOOKER, C. J., MOORE and GRANT, JJ., concurred. LONG, J., did not sit.