*In re* SHAW'S ESTATE.

FLANNERY *v.* TISCHNER.

1. HUSBAND AND WIFE—CLAIM OF MARRIED WOMAN.

A claim for board and room of a boarder would belong to the husband and not to the wife, where he was the head of the household, and furnishing the family supplies.[1]

2. EXECUTORS AND ADMINISTRATORS—HUSBAND AND WIFE—ASSIGNMENTS—JUDGMENT—INSEPARABILITY.

In an action by a daughter-in-law against the estate of her mother-in-law for the latter's board and room and for personal services rendered by plaintiff while decedent lived in the home of plaintiff and her husband, a judgment for the full amount claimed, in the absence of an assignment of the claim for board and room, which belonged to the husband, it being impossible to say how much was allowed for board and room and how much for personal services, was manifestly excessive, and should be reversed.

Error to Wayne; Mandell, J. Submitted April 10, 1918. (Docket No. 57.) Decided June 3, 1918.

Elizabeth Flannery presented a claim against the estate of Elizabeth Shaw, deceased, for services rendered. The claim was disallowed by the commissioners, and claimant appealed to the circuit court. Judgment for claimant. Joseph E. Tischner, executor, brings error. Reversed.

*Thomas A. E. Weadock,* for appellant.

*Dohany & Hersch* and *Dennis B. Hayes,* for appellee.

STONE, J. The claim of the plaintiff was originally presented to the commissioners on claims in the estate of Elizabeth Shaw, deceased, and as appears by the bill of exceptions, was as follows:

[1]See note in 46 L. R. A. (N. S.) 238.

"The Estate of Elizabeth Shaw, Deceased,
        "To Mrs. Elizabeth Flannery, Dr.
"For board and room for Elizabeth Shaw, deceased,
for 208 weeks between July 10, 1903, and September 1,
1908, and services rendered as attendant or general
nurse in caring for deceased during that time, she
being sick most of the time, and required waiting on.
"208 weeks at $7.00 per week.............. $1,456.00."

Plaintiff was the daughter-in-law of deceased, and
the wife of John Flannery, a son of deceased by a
former marriage. Plaintiff was married to John Flan-
nery in June, 1903, and went to live in the home be-
longing to the husband at No. 526 Fort street, Detroit,
and the deceased was a member of the family. They
lived there until in 1906, when they all moved to 832
Congress street, east, into a house belonging to de-
ceased. The husband of plaintiff kept the house and
paid the grocery bills.

On June 19, 1908, the husband of the plaintiff died,
and in September of that year plaintiff left the home
of deceased and did not return. Elizabeth Shaw died
testate November 7, 1910. The estate of John Flan-
nery has never been administered. He never assigned
any claim, or right which he had against the estate of
Mrs. Shaw, to the plaintiff.

The claim of plaintiff being disallowed by the com-
missioners on claims, she appealed to the circuit court.
Upon the trial at the circuit, there was no evi-
dence the husband of plaintiff ever gave any consent
to her to make claim for the board, room or services
involved in this case. Upon the trial the plaintiff was
sworn and testified in her own behalf. It is the claim
of appellant that she was permitted to testify, over his
objection and exception, to many facts that were
equally within the knowledge of the deceased. These
questions related to whether, and how long, Mrs. Shaw
lived with plaintiff and her husband; who owned the
home; who were members of the household; what doc-

tors attended Mrs. Shaw; how much and how often she was sick, etc. There was a large amount of testimony taken, and at the close of the plaintiff's case counsel for appellant moved for a directed verdict in his behalf for the reason that the plaintiff had not made out a case, owing to the family relationship, and the circumstances of the case. It is the claim of the appellant that the trial court, in the presence of the jury, in ruling against said motion, said:

"There is testimony enough here so that an inference could be drawn that there were contract relations between the claimant and the deceased."

The case was submitted to the jury, and the result was a verdict and judgment for the whole amount of plaintiff's claim, with interest, amounting to $1,692.62.

The defendant made a motion for a new trial based upon many grounds, among which was the claim that the verdict was excessive in amount. The motion was denied, and exceptions duly entered. The following appears in the charge of the court:

"Starting out in this case with the presumption that whatever services were rendered by Mrs. Flannery, those services were expected to be gratuitously rendered, you should determine whether or not the testimony in this case overcomes and rebuts that presumption. The claim of the claimant is that on numerous occasions during the term of years, statements were made in her, that is in Mrs. Flannery's presence, by Mrs. Shaw, to persons outside of the family, that compensation would be made and that she would receive pay for her services. The claim of the defendant with regard to the question of liability is that the relationship that existed was such, and the services were of such a character, that no compensation was expected or should have been expected by Mrs. Flannery, and that none was intended by Mrs. Shaw. There is the issue of facts and you will have to determine from the evidence in the case, which unfortunately is very contradictory, whether or not there should be compensation."

In the course of the charge the following occurred:

"*Mr. Weadock:* I want to call your honor's attention to the fact that in the amount stated to the jury that includes board and washing, and there is no testimony to support that claim.

"*The Court:* I do not wish to state the character of the claim. There has been a bill of particulars of that claim and I believe that does include the items for board and washing, and care in the nature of attendance and nursing, and of course in determining the amount of compensation, if you reach that question at all, you will have to take into consideration the claim and determine whether any or all of it has been earned, under the instructions that I have already given to you."

The defendant has brought the case here upon writ of error, and there are many assignments of error. Among the numerous errors assigned are those complaining of the testimony of the plaintiff as to matters equally within the knowledge of the deceased; the claimed prejudicial remarks of the court in the presence of the jury above set forth; the part of the charge of the court first above stated; and the denial of the motion for a new trial.

As we said in *Brackett's Estate* v. *Burnham's Estate*, 199 Mich. 326, it seems to us that this case was tried and submitted to the jury upon a wrong theory. The claim sued upon and submitted to the jury contained the items of board and room, which manifestly belonged to the husband of the plaintiff, and recovery should have been limited to the personal services of the plaintiff. There was no evidence of the value of these services independently and separately from the value of the board and room. As was said in *Stackable* v. *Estate*, 165 N. W. 665, it seems to us that this case was

"It is clear that, without some assignment, this claim for board would belong to the husband and not to the wife. He was the head of the household, and

201—Mich.—37.

furnishing the family supplies. There had to be some agreement on his part with his wife that she should receive the pay for the board."

The rule has been so recently restated, and the authorities cited in the *Brackett Case*, that we content ourselves by a reference to that case. It will be borne in mind that the plaintiff recovered the full amount of her claim, and it is impossible to say how much was allowed for board and room, and how much for personal services. No error is assigned upon the latter part of the charge above quoted, but it is so manifest that the verdict was excessive, that the judgment should not stand. To permit it to stand would be a miscarriage of justice.

As the case must go back for a new trial, it is not necessary to pass upon many of the questions raised by the assignments of error relating to the rulings upon the admissibility of evidence, as the questions are not likely to arise upon another trial. We refer, however, to the objection that plaintiff was permitted to testify to some matters that were equally, or alike, within the knowledge of the deceased. The case presented much conflicting testimony, and was a close one upon its facts, and as was said in *Shouldice* v. *McLeod's Estate*, 130 Mich. 444, 448: It is

"apparent at a glance that the slightest contravention of the rules of evidence, by permitting testimony from the claimant which was incompetent, might have turned the scale."

This matter will probably be properly taken care of upon another trial. For the prejudicial error above stated, relating to the manner in which the case was tried and submitted to the jury, we are constrained to reverse the judgment of the circuit court, with costs to appellant; and a new trial is ordered.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, and KUHN, JJ., concurred. FELLOWS, J., did not sit.